## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 11 2018, 8:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jeffery Haupt
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Michael Gene Worden
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Edward L. Muse,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

May 11, 2018

Court of Appeals Case No.
71A04-1711-CR-2673

Appeal from the St. Joseph
Superior Court

The Honorable Elizabeth C.
Hurley, Judge

Trial Court Cause No.
71D08-1611-F5-242

**Mathias, Judge.**

[1] Edward L. Muse ("Muse") was found guilty after a jury trial in the Monroe

Circuit Court of Level 5 felony robbery and Level 5 felony battery with a deadly

weapon. The trial court entered judgment only on the Level 5 felony robbery. Muse now appeals arguing that the evidence was insufficient to support his conviction.

[2] We affirm.

## Facts and Procedural History

[3] On November 16, 2016, Kyle Jones ("Jones") traveled with his father and his girlfriend from Peru, Indiana to South Bend, Indiana. Jones told his father that he was going to South Bend for construction work, but in reality, he was going to meet up with James Allen ("Allen") to purchase heroin.[1] Jones had purchased drugs from Allen in the past, and Jones currently owed him money from previous transactions. They arrived in South Bend at a home owned by Lawrence Rucker ("Rucker"), where Allen regularly conducted drug transactions. Jones knocked on the door, and Rucker's roommate Jenna Vanhorn ("Vanhorn") opened the door and let him inside.

[4] Allen was still at work, but Muse was inside sitting at a table in the living room waiting for Allen to return home so that he could purchase marijuana. Rucker was in his bedroom, and Vanhorn left soon after Jones arrived. Jones used the restroom, and when he came out, Allen had arrived home and began asking Jones for the money that he was owed.

---

[1] Jones's father drove because Jones did not have a driver's license. *See* Tr. p. 128.

[5] After Allen demanded money several times, he attacked Jones. Muse jumped up from the table he was sitting at and began helping Allen pummel and push Jones into Rucker's bedroom. In Rucker's bedroom, Allen grabbed an airsoft gun and began hitting Jones over the head with it. Rucker watched as the two men attacked Jones, and he testified that Muse was "[r]ight to [Allen's] side doing the same thing, just holding him down and hitting him." Tr. p. 61. Jones's wallet was eventually removed from his pocket, and Allen picked it up. Muse continued to hit Jones after Allen had the wallet. At this point, both Allen and Muse walked Jones towards the back door, threw him outside, and followed Jones out into the yard.

[6] Jones's father and girlfriend, who had been waiting in the truck in the driveway, were shocked when they saw Jones thrown out of the house. They both exited the vehicle, and Jones's girlfriend stated she was calling the police. Allen and Muse immediately went back into the house. Soon after, Allen and Muse exited the house again and began walking down the sidewalk. Jones followed the two men while remaining on the phone with police waiting for them to arrive. Allen and Muse returned to the house, went inside, and officers arrived.

[7] South Bend Police Department officers knocked on the front door, Rucker answered, and he was taken into custody. However, Allen and Muse remained inside, and SWAT was eventually called. Officers tried to coerce Allen and Muse out of the home for roughly forty-five minutes using a PA system, but they were unsuccessful. SWAT ultimately approached the front door, opened it,

and the two men finally exited the home. Both Allen and Muse were wearing different clothes from what they were wearing during their attack on Jones.

[8] On November 23, 2016, the State charged Muse with Level 5 felony robbery and Level 5 felony battery with a deadly weapon. A three-day jury trial commenced on September 18, 2017, after which Muse was found guilty as charged. At sentencing on October 31, 2017, the trial court merged the offenses and entered judgment of conviction only on the felony robbery. The court sentenced Muse to four years executed in the Department of Correction. Muse now appeals.

## Discussion and Decision

[9] Muse contends that the evidence is insufficient to sustain his conviction. When reviewing a claim of insufficient evidence to sustain a conviction, we consider only the probative evidence and reasonable inferences supporting the verdict. *Jackson v. State*, 50 N.E.3d 767, 770 (Ind. 2016). It is the fact-finder's role, not ours, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Id*. We will affirm the conviction unless no reasonable fact-finder could have found the elements of the crime proven beyond a reasonable doubt. *Id*. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Drane v. State*, 867 N.E.2d 144, 147 (Ind. 2007).

[10] In order to convict Muse of Level 5 felony robbery, the State was required to prove beyond a reasonable doubt that he knowingly or intentionally took property from Jones by either using or threatening the use of force. Ind. Code. § 35-42-5-1(a). Here, Muse was charged as an accomplice under Indiana Code section 35-41-2-4 which provides, in part, "A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense[.]" Under this statute, an individual who aids another person in committing a crime is just as guilty as the actual perpetrator. *Schaaf v. State*, 54 N.E.3d 1041, 1043 (Ind. Ct. App. 2016) (citation omitted). This statute does not set forth a separate crime, but it merely provides a separate basis of liability for the crime that is charged. *Id.* Thus, a person can be charged as a principal and convicted as an accomplice. *Id.*

[11] Our supreme court has identified four factors that can be considered by the fact-finder in determining whether a defendant aided another in the commission of a crime: (1) presence at the scene of the crime; (2) companionship with another engaged in the crime; (3) failure to oppose the commission of the crime; and (4) the course of conduct before, during, and after the occurrence of the crime. *Garland v. State*, 788 N.E.2d 425, 431 (Ind. 2003). Here, all four factors weigh in favor of Muse's guilt.

[12] First, Muse does not dispute that he was present at the scene when Jones was beaten and robbed.

Second, Muse was acquainted with Allen as he was at Rucker's house the day of the crime to buy marijuana from Allen.

Third, Muse not only failed to oppose the commission of the crime, but rather he actively participated. Rucker testified that about thirty to forty seconds after Allen began striking Jones, Muse jumped up from the table and both he and Allen "had [Jones] pinned down and were hitting [him]." Tr. pp. 59–60. Jones explained during trial that both Allen and Muse pushed him into Rucker's back bedroom where the bulk of the beating took place, and where Jones's wallet and money was taken—approximately $190. Tr. pp. 98–101. Allen and Muse then grabbed Jones by his sweatshirt and threw him out the back door.

We acknowledge Muse's point that "[a]ccording to Allen, Muse sat at the table the entire time" and took no part in the beating and robbery of Jones. Appellant's Br. at 12. However, as we have repeatedly explained, "[t]he factfinder is obliged to determine not only whom to believe, but also what portions of conflicting testimony to believe[.]" *Perry v. State*, 78 N.E.3d 1, 8 (Ind. Ct. App. 2017) (quotation and citation omitted). The jury here was free to believe the account of Rucker and Jones, or Allen's account. And based on their verdict, the jury decided to credit the former, a decision that we will not disturb on appeal.

Fourth, Muse's behavior before, during, and after the beating and robbery is also quite revealing, and it confirms his active involvement in the crime. Muse alleges that his "conduct before, during, and after the commission of the crime

is that of an innocent bystander as everyone agreed he was sitting at the table before anything happened." Appellant's Br. at 12. We disagree.

[17] Muse was at Rucker's house with Allen just before the attack on Jones, and he was there to buy marijuana. As explained above, once Allen began assaulting Jones, Muse almost immediately jumped up and took part in the attack. Moreover, after the fighting and robbery were over, Muse left the house with Allen only to return a short time later. Allen and Muse then failed to respond to officers' commands, and they did not exit the home for approximately forty-five minutes. When they did finally exit, both men had changed clothes, presumably to conceal Jones's blood.

[18] Considering the four factors that determine accomplice liability, and the substantial evidence presented against Muse, we conclude that there was sufficient evidence to convict Muse of aiding in the robbery of Jones. Muse's arguments to the contrary are nothing more than a request for us to reweigh the evidence before the jury, which we cannot and will not do.

## Conclusion

[19] Based on the facts and circumstances before us, the evidence presented to the jury was sufficient to sustain Muse's conviction. Accordingly, we affirm.

Riley, J., and May, J., concur.